IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DE-CHU CHRISTOPHER TANG,<br><br>Plaintiff,<br><br>-against-<br><br>ALTIMMUNE, INC., VIPIN K. GARG, and DAVID J. DRUTZ<br><br>Defendants. | **Complaint for a Civil Case**<br><br>Case No. GLS21CV3283<br><br>*(to be filled in by the Clerk's Office)*<br><br>**JURY TRIAL DEMANDED** |

I. The Parties to This Complaint

A. The Plaintiff

Name: DE-CHU CHRISTOPHER TANG
Title: Founder of Vaxin Inc. (Altimmune, Inc.)
Street Address: 6713 Shady Bend Lane
City and County: Plano; Collin County
State and Zip Code: Texas 75024
Telephone Number: (205) 612-0337
E-mail Address: dechutang@gmail.com

B. The Defendants

Defendant No. 1
Name: ALTIMMUNE, INC.
Street Address: 910 Clopper Road, Suite 201-S
City and County: Gaithersburg; Montgomery County
State and Zip Code: Maryland 20878
Telephone Number: (240) 654-1450
Website: https://www.altimmune.com

Defendant No. 2
Name: VIPIN K. GARG
Title: Chief Executive Officer at Altimmune, Inc.
Street Address: 910 Clopper Road, Suite 201-S
City and County: Gaithersburg; Montgomery County
State and Zip Code: Maryland 20878
Telephone Number: (240) 654-1450, ext. 49
E-mail Address: vgarg@altimmune.com

Defendant No. 3
Name: DAVID J. DRUTZ
Title: Board Member at Altimmune, Inc.
Street Address: 1059-A Canterburg Lane
City and County: Chapel Hill; Orange County
State and Zip Code: North Carolina 27517
Telephone Number: (919) 942-4547
E-mail Address: ddrutz@pacificbiopharma.com

II. **Basis for Jurisdiction**

The basis for federal court jurisdiction: Diversity of Citizenship

i. The Plaintiff, De-chu Christopher Tang, is a citizen of the State of Texas.

ii. The Defendants

   a. The Defendant, Altimmune, Inc., is incorporated under the laws of the State of Delaware, and has its principal place of business in the State of Maryland.

   b. The Defendant, Vipin K. Garg, is a citizen of the State of North Carolina.

   c. The Defendant, David J. Drutz, is a citizen of the State of North Carolina.

iii. The Amount in Controversy

The amount in controversy – the amount the plaintiff claims the defendants owe or the amount at stake – is more than $75,000, not counting interest and costs of court, because it took >$4,000,000 to generate the laboratory

records and science in plaintiff's laboratory at University of Alabama at Birmingham over many years (EXHIBIT 4). The Defendants performed corporate kleptocracy to rob away plaintiff's university records that have nothing to do with Altimmune, Inc. with brutal force for no reasons during 2019.

### III. Statement of Claim

Plaintiff, De-chu Christopher Tang (hereinafter "Plaintiff"), is making the following allegations against Defendants Altimmune, Inc. (hereinafter "Altimmune" or "Defendants") which is a corporation doing business in Maryland, Altimmune's current Chief Executive Officer Vipin K. Garg (hereinafter "Garg" or "Defendants"), and David J. Drutz (hereinafter "Drutz" or "Defendants") who is currently a board member at Altimmune and was the Chairman of the Altimmune Board prior to July 2018:

### A. FACTS

1. Plaintiff was an Assistant/Associate Professor at University of Alabama at Birmingham (hereinafter "UAB") during 1994-2004. Plaintiff founded Vaxin Inc. (hereinafter "Vaxin") on UAB campus in 1997; Vaxin moved out of UAB campus in 2004; a subset of Vaxin board members defenestrated Plaintiff out of Vaxin without authorization from a legitimate board meeting by changing all of the door locks against Plaintiff's will in 2012; Vaxin was relocated from Alabama to Maryland in 2012; Vaxin's nameplate was changed to Altimmune, Inc. in 2015; Altimmune became a public company (Nasdaq: ALT) in 2017.

2. Plaintiff's inventions during his tenure as the Chief Scientific Officer at Vaxin include: i) skin-patch vaccines that allow noninvasive vaccination following topical application of a patch with neither pain nor fear (*Nature* 388: 729, 1997; *Vaccine* 23: 1029, 2005; *Infect. Immun.* 74: 3607, 2006); ii) *in ovo* vectored vaccines that allow mass-immunization of chickens by robotic injection of vectored vaccines into embryonated chicken eggs (*Vaccine* 25:

2886, 2007); iii) AdHigh system that allows rapid generation of nonreplicating recombinant adenovirus vectors without contamination with replication-competent adenovirus (*Expert Rev. Vaccines* 8: 469, 2009); and iv) drug-vaccine duo that allows rapid protection of a host against pathogens post-immunization in a variety of disease settings (*PLoS ONE* 6: e22605, 2011; *PCT* WO 2012/129295). Plaintiff's inventions have generated deep and broad trends that may endure to benefit the society in the years to come (Google search of Plaintiff's name). Altimmune could have emerged as a major technological powerhouse if one or more of Plaintiff's inventions should have been adequately developed.

3. Unfortunately, a subset of Vaxin/Altimmune board members failed to comprehend the significance of Plaintiff's inventions during the early stage. Ownership of the AdHigh system was returned to Plaintiff and other Inventors during 2009 because Vaxin was not interested in AdHigh (EXHIBIT 1); Plaintiff was forced to file a provisional patent application using personal money during 2011 because Vaxin refused supporting any patent application pertaining to the drug-vaccine-duo platform for protecting its intellectual property (IP) rights at that time; Vaxin's then-CEO William J. Enright (hereinafter "Enright") belittled Plaintiff's inventions on many occasions.

4. It would be legitimate for Defendants and Plaintiff to part ways in order for each party to focus on the projects that they deem important. Unfortunately and despicably, Vaxin, Enright, and Drutz robbed all of Plaintiff's projects, resources, and laboratory records by changing all of the office/laboratory door locks in conjunction with defenestration of Plaintiff out of Vaxin in 2012. It was allegedly illegal and quintessentially indecent to concoct a hokey scheme by brainwashing Plaintiff on how "worthless" his inventions were followed by subsequent robbery of those "worthless" inventions away from Plaintiff with brutal force.

5. Defendants have failed to parlay Plaintiff's roots after defenestrating Plaintiff. Records show that Defendants are incompetent in bringing

4

Plaintiff's inventions across the finish line, and a lot of Plaintiff's worthy data have been left to rot in Defendants' hands. Notably, Plaintiff's invention on the drug-vaccine duo capable of rapidly arresting mucosal pathogens in a wide variety of disease settings (*PLoS ONE* 6: e22605, 2011; *PCT* WO 2012/129295) is endowed with the potential to mitigate the COVID-19 pandemic that is currently ravaging nearly the entire world. Thus Defendants' despicable action during their assassination of Plaintiff's inventions has transformed Defendants into a public enemy.

6. Plaintiff filed a lawsuit against Vaxin and Enright on a variety of allegations in 2013; the lawsuit (Case No. 2:13-CV-0401-SLB) was settled in 2016 after Vaxin changed its nameplate to Altimmune in 2015. The Confidential Settlement Agreement can be disclosed to the public when ordered by Court. Altimmune and Plaintiff mutually agreed that all of Plaintiff's technologies developed by consuming resources provided by Vaxin belong to Altimmune except those given up by Defendants. Notably, Plaintiff's technologies developed at UAB were not listed as properties that belong to Defendants.

7. Soon after the lawsuit (Case No. 2:13-CV-0401-SLB) was settled in 2016, Plaintiff informed Drutz (then-Chairman of the Altimmune Board) in writing during 2016 that all or the great majority of Plaintiff's UAB laboratory notebooks (1994-2004) had been robbed by Vaxin and Enright (EXHIBIT 2). Altimmune can keep Plaintiff's Vaxin laboratory notebooks, but not his UAB records which have nothing to do with Defendants. Defendants could have closed this case with decency by returning the robbed properties back to Plaintiff; however, Defendants had responded to Plaintiff's request with silence until 2019. In addition to Defendants' illegal possession of Plaintiff's UAB laboratory records, Drutz's nonchalant email dated 22 September 2016 in conjunction with his silent response to Plaintiff's questions (EXHIBIT 2) speak volumes that: i) Drutz supports Altimmune's predator policy as a prime enabler; ii) Drutz nurtures and/or tolerates plagiarism; iii) Drutz does not care about Altimmune's success and has seriously violated his fiduciary

duty as a board member; iv) Drutz has been shrewdly hurting Plaintiff's career in silence without leaving any fingerprint until he sent this nonchalant email in 2016 (EXHIBIT 2).

8. In 2019, Defendants' counsel Matthew A. Chivvis who represented Altimmune and Garg wrote to Plaintiff claiming categorically that all of Plaintiff's UAB laboratory notebooks also belonged to Altimmune (EXHIBIT 3). Notably, Garg made this wrongful claim through counsel with neither rationale nor supporting evidence. Garg's absurd claim to own Plaintiff's UAB laboratory records on 10 May 2019 (EXHIBIT 3) thus changed the issue from an alleged procrastination to a blatant robbery crime which seriously breached the 2016 Settlement Agreement and flouted the law.

9. Plaintiff's laboratory records contain a lot of worthy findings and provide inspiration on how to develop beneficial technologies forward; therefore, Defendants' alleged robbery of Plaintiff's laboratory records has impeded Plaintiff's ability to develop beneficial technologies. Defendants' alleged thievery has thus purposely, continuously and systematically hurt Plaintiff's career. Defendants thus represent the absolute opposite of greatness: robbing values; defenestrating the Inventor; and leaving the data to rot. Overall, Plaintiff deems it a fraud for "bean counters" to reap or assassinate scientific data that are not generated by them.

10. The AdHigh system is owned by Plaintiff and his associates, not by Defendants (EXHIBIT 1). Although Plaintiff requested Defendants to destroy Plaintiff's AdHigh system and any vector generated using Plaintiff's AdHigh at Altimmune before 31 December 2019 (EXHIBIT 3), Defendants have responded to Plaintiff's request with silence.

11. Plaintiff filed a lawsuit (Case No. 4:20-cv-00063-ALM-CAN) against Altimmune, Garg, and Drutz as a pro-se plaintiff in Texas in 2020, on charges pertaining to Altimmune's robbery of Plaintiff's personal properties, illegal use of the AdHigh system, and plagiarism. In March 2021, a Judge dismissed Plaintiff's suit without prejudice because the Judge concluded that the Texas Court had no authority to trial a company in Maryland due to

6

lack of personal jurisdiction. The merit of this suit (Case No. 4:20-cv-00063-ALM-CAN) has not been judged.

### B. FIRST CAUSE OF ACTION
### BREACH OF SETTLEMENT AGREEMENT BY ROBBING PLAINTIFF'S PROPERTIES POST-SETTLEMENT

12. Defendants' ongoing robbery of Plaintiff's properties post-settlement represents a recurring crime that must be arrested. Defendants' alleged thievery has purposely, continuously and systematically hurt Plaintiff in conjunction with the global scientific community, as well as the public nationwide by preventing Plaintiff from developing innovative technologies that will benefit the society. As detailed above, Defendants are bound to return Plaintiff's UAB laboratory notebooks which do not belong to Altimmune. In writing, Defendants have illegally refused doing so by wrongfully claiming that all of Plaintiff's UAB laboratory notebooks also belonged to Altimmune with neither rationale nor supporting evidence (EXHIBIT 3). Defendants' blatant robbery of Plaintiff's properties is not only a serious breach of the 2016 Settlement Agreement but also a shameless display of corporate kleptocracy.

### C. SECOND CAUSE OF ACTION
### ADHIGH SYSTEM

13. Plaintiff and his associates developed the proprietary AdHigh system, which is owned by the Inventors, not Altimmune (EXHIBIT 1). Thus Defendants are not allowed to commercialize Plaintiff's AdHigh system as described (*Intranasal Vaccines and Therapeutics; https://www.altimmune.com; December 20, 2021*) without Plaintiff's authorization. Plaintiff requested Defendants to destroy Plaintiff's AdHigh system and any vector generated using Plaintiff's AdHigh at Altimmune prior to 31 December 2019 (EXHIBIT 3). If Defendants should need the AdHigh system, they could license it from the Inventors including Plaintiff or generate the AdHigh system from raw

material by themselves. However, Defendants continue commercializing Plaintiff's inventions pertaining to "*Intranasal Vaccines and Therapeutics*" allegedly using AdHigh (*htttps://www.altimmune.com*) and have responded to Plaintiff's request with silence.

IV. **Relief**

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

14. That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;
15. That Defendants return all of Plaintiff's UAB laboratory notebooks back to Plaintiff within 30 days after it is ordered by Court;
16. That Defendants pay Plaintiff a civil penalty in the amount of $100,000 within 30 days after returning all of the UAB laboratory notebooks back to Plaintiff;
17. That Defendants pay Plaintiff a compensation in the amount of $4,000,000 within 30 days after it is ordered by Court if Defendants are unable to return the UAB laboratory notebooks back to Plaintiff. Plaintiff's UAB laboratory notebooks are worth $4,841,600, as justified by awards and grants won by Plaintiff as a faculty member at UAB during 1994-2004 in support of the generation of these datasets (EXHIBIT 4);
18. That Defendants declare a moratorium to use Plaintiff's AdHigh system and any vector generated using Plaintiff's AdHigh;
19. That Defendants declare that Plaintiff's AdHigh system and any vector generated using Plaintiff's AdHigh will be destroyed at Altimmune;
20. That Defendants declare that Plaintiff's AdHigh system and any vector generated using Plaintiff's AdHigh will not be utilized for any commercial purpose without Plaintiff's authorization;
21. Plaintiff further prays for such additional relief as the interests of justice may require.

Plaintiff demands a trial by jury of all triable issues.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: December 21, 2021

Signature of Plaintiff

Printed Name of Plaintiff      De-chu Christopher Tang

A copy of this Complaint is sent by U.S. mail to the following address by Plaintiff:

**U.S. District Court for the District of Maryland**
**Office of the Clerk**
**6500 Cherrywood Lane**
**Greenbelt, MD 20770**

**Respectfully submitted,** this 21st day of December, 2021.

_____
**DE-CHU CHRISTOPHER TANG**
**FOUNDER; VAXIN INC. (currently known as ALTIMMUNE, INC.)**

6713 Shady Bend Lane
Plano, TX  75024

Phone:  (205) 612-0337
Email:  dechutang@gmail.com

**PLAINTIFF REPRESENTING HIMSELF**