**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DE-CHU CHRISTOPHER TANG,** | * | |
|     **Plaintiff,** | * | |
| v. | * | Civ. No.: DLB-21-3283 |
| **ALTIMMUNE, INC.,** *et al.*, | * | |
|     **Defendants.** | * | |

**MEMORANDUM**

De-Chu Christopher Tang, a scientist and inventor, filed this lawsuit against his former company, Altimmune, Inc., its current Chief Executive Officer, Vipin K. Garg, and a board member who was the former Chairman, David J. Drutz, alleging the defendants took and did not return his laboratory notebooks and his "AdHigh system" invention. ECF 1, 21 (am. compl.). This suit is the latest in a series of lawsuits that Dr. Tang has filed against Altimmune and its executives. *See Tang v. Altimmune, Inc. (formerly Vaxin Inc.)*, No. 2:13-CV-0401-SLB (N.D. Ala.) (Alabama lawsuit against Altimmune and its then-CEO William Enright in 2013) ("Alabama action"); *Tang v. Altimmune*, No. 4:20-CV-00063-AM-CAN (E.D. Tex.) (Texas lawsuit against Altimmune, Dr. Garg, and Dr. Drutz in 2019) ("Texas action").

The defendants filed the pending motion under Federal Rules of Civil Procedure 12(b)(2) and (b)(6). ECF 22, at 1. Dr. Tang opposed the motion, ECF 27, and the defendants filed a reply, ECF 28 (redacted), 29 (sealed). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, the defendants' motion is granted, and the plaintiff's amended complaint, ECF 21, is dismissed with prejudice.[1]

---

[1] This case was reassigned to me in December 2022 after the Honorable Paul W. Grimm retired.

## I.     Background

The Court accepts as true the following facts alleged in Dr. Tang's amended complaint and the attached exhibits. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011).

Dr. Tang founded Vaxin Inc. in 1997 when he was an assistant professor at the University of Alabama at Birmingham ("UAB"). ECF 21, ¶ 1. Dr. Tang and his company Vaxin left UAB in 2004. *Id.* During his tenure as the Chief Scientific Officer at Vaxin, Dr. Tang made multiple inventions, including the AdHigh system. *Id.* ¶ 2. In 2009, Vaxin assigned the patent rights in the AdHigh invention to Dr. Tang and his co-inventors. *Id.* ¶ 3; ECF 21-3 (Ex. 3).

Dr. Tang alleges that a subset of the Vaxin board locked him out of a board meeting in 2012. ECF 21, at ¶ 3. He claims that he also was locked out of his office and laboratory and that Vaxin retained his laboratory notebooks and UAB records. *Id.* ¶¶ 4-5, 7-9.

Dr. Tang alleges the board relocated the company to Maryland in 2012. *Id.* In 2015, Vaxin's name was changed to Altimmune, Inc., and it became a public company in 2017. *Id.*

Dr. Tang, through counsel, filed the Alabama action against Vaxin in 2013; the case settled in 2016. *Id.* ¶ 6 (citing the settlement agreement in the Alabama action).[2] After the case settled, Dr. Tang advised Dr. Drutz (then-Chairman of the Altimmune board) that Vaxin had taken most of his UAB laboratory notebooks. *Id.* ¶ 7 (citing ECF 21-2 (Ex. 2)); *see also* ECF 21-1, at 6 (Ex. 1, letter referring to a 2016 email in which he asked for the notebooks to be returned). Dr. Tang concedes the defendants may keep his Vaxin laboratory notebooks, but he alleges they illegally took and retain his UAB laboratory notebooks. ECF 21, ¶ 7. Dr. Tang alleges that the defendants'

---

[2] The defendants attached a copy of the Confidential Settlement Agreement and General Release ("settlement agreement") to their motion. ECF 23-1 (sealed). They also attached a copy of the Final Consent Judgment and Permanent Injunction issued by the Court in the Alabama action on August 25, 2016. ECF 22-3.

counsel advised him in 2019 that Altimmune rightfully owns his UAB laboratory notebooks; Dr. Tang describes this as "a blatant robbery crime." *Id.* ¶ 8 (citing Ex. 1, ECF 21-1).[3] Dr. Tang also requested that the defendants destroy the AdHigh system before December 31, 2019. *Id.* ¶ 10 (citing ECF 21-1 (Ex. 1)).

Dr. Tang, proceeding *pro se*, filed the Texas action against the defendants, alleging theft of his personal property, illegal use of the AdHigh system, and plagiarism. *Id.* ¶ 11. The lawsuit was dismissed without prejudice because the Texas court lacked personal jurisdiction over the defendants. *Id.* Dr. Tang now asserts virtually the same claims here in Maryland, where he claims the Court has personal jurisdiction over the defendants. ECF 1, 21. He identifies two causes of action, entitled (1) breach of settlement agreement by robbing the plaintiff's properties post-settlement; and (2) AdHigh system. ECF 21, ¶¶ 12, 13.

The defendants have moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over Drs. Garg and Drutz, who are residents of North Carolina, and under Rule 12(b)(6) for failure to state a claim. ECF 22-1 (redacted mem.); ECF 23 (sealed mem.).

**II.     Standard of Review**

"Under Rule 12(b)(2), a defendant 'must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge.'" *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir.

---

[3] The Court notes, however, that the defendants appear to be asserting ownership only over the notebooks that were generated while Dr. Tang was working for Vaxin. *See* ECF 21-1, at 9 ("Altimmune does not agree that you may unilaterally label as UAB data information that was generated while you were still working for Vaxin and used Vaxin resources. . . Altimmune owns all rights in data that you developed while working at Vaxin . . . includ[ing] lab notebooks that you produced even if they were located at UAB.").

2020) (quoting *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)). "When a district court decides personal jurisdiction without an evidentiary hearing, the plaintiff need only show a *prima facie* case of personal jurisdiction." *Wallace v. Yamaha Motors Corp., USA*, No. 19-2459, 2022 WL 61430, at *1 (4th Cir. Jan. 6, 2022). "This '*prima facie* case' analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Hawkins v. i-TV Digitalis Tavkozlesizrt*, 935 F.3d 211, 226 (4th Cir. 2019). Unlike when deciding a Rule 12(b)(6) motion, however, a court deciding a Rule 12(b)(2) motion may consider "affidavits and exhibits" beyond the scope of the complaint "in order to assure itself of personal jurisdiction." *UMG Recordings*, 963 F.3d at 350 (citing *Grayson*, 816 F.3d at 269). "A court must also 'construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inference for the existence of jurisdiction.'" *Id.* (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim need not be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ*

4

*is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). The Court may, however, reach an affirmative defense on a motion to dismiss "if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis deleted).

"[P]*ro se* filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quotation omitted). Accordingly, the Court must construe *pro se* pleadings liberally "to recognize claims despite various formal deficiencies." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*,

5

716 F.3d 801, 805 (4th Cir. 2013) (quotation omitted). Thus, a *pro se* complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quotation omitted).

Finally, when reviewing a motion to dismiss, a court "may consider the complaint itself and any documents that are attached to it," as well as any "document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (citations omitted). When the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

**III.   Analysis**

  **A. Rule 12(b)(2)**

The defendants contend that the Court lacks personal jurisdiction over Drs. Garg and Drutz. Dr. Tang argues that they "represented" Altimmune, which is based in Maryland, and they "committed their alleged crimes in Maryland, and should stand trial in Maryland." ECF 21, at 3; *see also* ECF 27, ¶ 18.

The Court may have general or specific personal jurisdiction over a defendant. A plaintiff may establish general personal jurisdiction when a defendant has "activities in the state [that are] 'continuous and systematic'" and unrelated to "the defendant's contacts with the state [that] are . . . the basis for the suit." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). Alternatively, a plaintiff may establish specific personal jurisdiction based on "the defendant's contacts with the forum state [that] also provide the basis for the suit." *Id.*

6

Dr. Tang alleges that Drs. Garg and Drutz are residents of North Carolina. ECF 21, at 3. Yet, he argues that because they work for Altimmune in Maryland, "the Altimmune headquarter[s] in Maryland should represent one of their domiciles." ECF 27, ¶ 20. A natural person may have multiple residences but has only one domicile. *C.I.R. v. Swent*, 155 F.2d 513, 515 (4th Cir. 1946). Where a person is domiciled is the "the paradigm forum for the exercise of general jurisdiction." *Reddy v. Buttar*, 38 F.4th 393, 400 (4th Cir. 2022) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011). To "establish a domicile in a State, it must be shown that the individual has a physical presence in that State with 'an intent to make [that] State a home.'" *Id.* (quoting *Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008)). "And once established, a domicile 'is presumed to continue until it is shown to have been changed[.]'" *Reddy*, 38 F.4th at 400 (quoting *Mitchell v. United States*, 88 U.S. 350, 353 (1874)). Dr. Tang has not shown that Drs. Garg and Drutz have a physical presence in Maryland with an intent to make Maryland their home. They may be affiliated with a company who is headquartered in Maryland, but they are not domiciled here by virtue of that affiliation. The Court finds Drs. Garg and Drutz are domiciled only in North Carolina. There is no general jurisdiction over them in Maryland.

Dr. Tang alleges the following conduct gives rise to specific jurisdiction in Maryland over Dr. Garg:

- Dr. Garg "is the Chief Executive Officer at Altimmune, Inc. in the State of Maryland." ECF 21, at 2;

- Dr. Garg "represented Altimmune, Inc. (a company in Maryland; originally founded by Plaintiff) to rob Plaintiff's properties for no reasons (or unspeakable reasons). Even though [he is a] resident[] of North Carolina, [he] represented a company in Maryland, committed [his] alleged crimes in Maryland, and should stand trial in Maryland." ECF 21, at 3;

7

- "In this case, [] Dr. Garg . . . represented Altimmune to commit [his] alleged crimes in the State of Maryland . . . ." ECF 21, at 4;

- "Dr. Garg represented Altimmune in 2019 to allegedly rob Plaintiff's university laboratory notebooks by claiming that all of Plaintiff's university laboratory notebooks belonged to Altimmune for no reasons (EXHIBIT 1)." ECF 21, at 4 (citing Ex. 1, ECF 21-1). The exhibit contains an exchange of four letters between Altimmune's counsel in California and Dr. Tang in Texas in 2019 relating to Dr. Tang's obligation to formalize a patent assignment. ECF 21-1. Dr. Tang briefly references Dr. Garg as CEO in his letter of April 28, 2019. *Id.*;

- "When Dr. Garg took the CEO position at Altimmune, Plaintiff wrote him an email to offer an olive branch in support of Altimmune by publishing important data that had been overlooked. As a response to Plaintiff's olive branch, Dr. Garg hired Counsel Chivvis to write Plaintiff a cease and desist letter containing nonsensical judgments (EXHIBIT 1). Counsel Chivvis' letters thus represented both Altimmune and Dr. Garg in Maryland. Even if someone else instigated Dr. Garg to do so, the decision to send those counter-productive letters still had to be made by the CEO, who was Dr. Garg." ECF 21, at 6 (citing ECF 21-1 (Ex. 1));

- "The 'robbery' occurred in Maryland on 10 May 2019 when Dr. Garg claimed that all of Plaintiff's university laboratory notebooks generated by many personnel in Plaintiff's university laboratory over 10 years (1994-2004) belonged to Altimmune (EXHIBIT 1). There was no evidence of robbery prior to 10 May 2019. Defendants' possession of Plaintiff's university laboratory notebooks could be interpreted as an unintentional mistake when the door locks were changed followed by alleged procrastination. However, Counsel Chivvis' letter dated 10 May 2019 (EXHIBIT 1), as instructed by Dr. Garg, has transmogrified an allegedly unintentional mistake to a blatant robbery crime." ECF 21, at 7 (citing Ex. 1, ECF 21-1);

- "In 2019, Defendants' counsel Matthew A. Chivvis who represented Altimmune and Garg wrote to Plaintiff claiming categorically that all of Plaintiff's UAB laboratory notebooks also belonged to Altimmune (EXHIBIT 1). Notably, Garg made this wrongful claim through counsel with neither rationale nor supporting evidence. Garg's absurd clam to own Plaintiff's UAB laboratory notebooks on 10 May 2019 (EXHIBIT 1) thus transmogrified the issue from an allegedly unintentional mistake to a blatant robbery crime." ECF 21, at 12 ¶ 8 (citing Ex. 1, ECF 21-1).

Dr. Tang alleges the following conduct gives rise to specific jurisdiction in Maryland over Dr. Drutz, a current Altimmune board member and former Chairman of the board:

- Dr. Drutz, "is a Board Member at Altimmune, Inc. in the State of Maryland." ECF 21, at 2;

8

- Dr. Drutz "represented Altimmune, Inc. (a company in Maryland; originally founded by Plaintiff) to rob Plaintiff's properties for no reasons (or unspeakable reasons). Even though [he is a] resident[] of North Carolina, [he] represented a company in Maryland, committed [his] alleged crimes in Maryland, and should stand trial in Maryland." ECF 21, at 3;

- "In this case, [] Dr. Drutz represented Altimmune to commit [his] alleged crimes in the State of Maryland . . . ." ECF 21, at 4;

- "Dr. Drutz represented Altimmune to allegedly assassinate Plaintiff's career by nurturing plagiarism and specifying that he supported a predator policy followed by responding to Plaintiff's requests pertaining to university laboratory notebooks, plagiarism, and the AdHigh system with a wall of silence in Maryland (EXHIBIT 2)." ECF 21, at 4 (citing Ex. 2, ECF 21-2). The exhibit contains an email from Dr. Tang to Dr. Drutz dated September 22, 2016, complaining about actions taken by Altimmune's CEO at that time, and a response from Dr. Drutz communicating that the then-CEO had the confidence of the Board of Directors. ECF 21-2;

- "Dr. Drutz's singular email in conjunction with his silence to Plaintiff's questions (EXHIBIT 2) speaks volumes that Dr. Drutz who was the then-Chairman of the Altimmune Board in Maryland supported a counter-productive predator policy, nurtured and/or tolerated plagiarism, and violated his fiduciary duty. . . As the then-Chairman of the Altimmune Board, Dr. Drutz's mindset as debunked in his email and subsequent silence has transmogrified Altimmune from a powerhouse of innovation to a patent troll. . . Plaintiff's research was [] assassinated by Dr. Drutz and his associates . . . ." ECF 21, at 6-7;

- "Unfortunately and despicably, Vaxin, Enright, and Drutz robbed all of Plaintiff's projects, resources, and laboratory records by changing all of the office/laboratory door locks in conjunction with defenestration of Plaintiff out of Vaxin in 2012." ECF 21, at 10 ¶ 4;

- "Soon after the lawsuit (Case 2:13-CV-0401-SLB) was settled in 2016, Plaintiff informed Drutz (then-Chairman of the Altimmune Board) in writing during 2016 that all or the great majority of Plaintiff's UAB laboratory notebooks (1994-2004) had been taken by Vaxin and Enright against Plaintiff's will (EXHIBIT 2)." ECF 21, at 11 ¶ 7 (citing ECF 21-2);

- "Drutz's nonchalant email dated 22 September 2016 in conjunction with his silent response to Plaintiff's questions (EXHIBIT 2) speak volumes that: i) Drutz supports Altimmune's predator policy as a prime enabler; ii) Drutz nurtures and/or tolerates plagiarism; iii) Drutz does not care about Altimmune's success and has seriously violated his fiduciary duty as a board member; iv) Drutz has been shrewdly hurting Plaintiff's career in silence without leaving any fingerprint until he sent this nonchalant email in 2016 (EXHIBIT 2)." ECF 21, at 11-12 ¶ 7 (citing ECF 21-2);

9

Determining whether this Court has specific personal jurisdiction over the individual defendants involves a two-step inquiry. The Court must first determine if "such jurisdiction is authorized by the long-arm statute of the state in which the district court sits." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). The Court then must decide whether "application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Id.*; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)). The Due Process Clause requires "'minimum contacts' with the forum so that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020) (quoting *Hawkins*, 935 F.3d at 228 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))).

Dr. Tang sues Dr. Garg and Dr. Drutz in their capacity as officers of Altimmune. Personal jurisdiction over an officer of a corporation in their individual capacity may not be based solely on their acts and contacts carried out in their corporate capacity. *Mates v. N.A. Vaccine, Inc.*, 53 F. Supp. 2d 814, 821 (D. Md. 1999) (citing cases). The Court must look to the corporate officer's contacts with Maryland in their individual capacity. *Birrane v. Master Collectors, Inc.*, 783 F. Supp. 167, 169 (D. Md. 1990).

Maryland's long-arm statute provides for "personal jurisdiction over a person, who directly or by an agent,"

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. § 6–103(b). Dr. Tang does not specify which provision he believes authorizes jurisdiction over the individual defendants. He plainly cannot rely on subsections (b)(3) or (b)(4) because he is not a Maryland resident and he does not allege any tortious injury occurred in Maryland. Subsections (b)(5) and (b)(6) clearly do not apply to these allegations. As for subsections (b)(1) and (b)(2), the only potentially applicable provisions, the Court cannot determine from Dr. Tang's allegations that there is personal jurisdiction over Dr. Garg or Dr. Drutz under them.

Even if Dr. Tang had established jurisdiction under the long-arm statute, he still would have to establish that the exercise of jurisdiction over the individual defendants complies with due process. To determine whether a nonresident defendant had the minimum contacts necessary to confer specific jurisdiction, the Court focuses "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "The Due Process clause permits the exercise of specific personal jurisdiction over a defendant if 'the defendant [has] purposefully established minimum contacts in the forum State such that it should reasonably anticipate being haled into court there.'" *Fidrych*, 952 F.3d at 138 (quoting *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 195, 189 (4th Cir. 2016)). When determining whether a defendant should reasonably anticipate being haled into court in a particular jurisdiction, courts consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction

11

would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).  The defendant must have "purposefully directed his activities at residents of the forum." *Fidrych*, 952 F.3d at 140 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (quoting *Burger King*, 471 U.S. at 475).

Dr. Tang fails to make a *prima facie* showing that the Court has specific personal jurisdiction over Dr. Garg.  Dr. Tang's allegations against Dr. Garg are based solely on the fact that he is Altimmune's current CEO.  Dr. Garg's role as an officer of a company whose headquarters is in Maryland is insufficient to establish personal jurisdiction; the Court must look to his contacts with Maryland "in his individual capacity." *Birrane*, 783 F. Supp. at 169.  And there are none.  Although Dr. Tang alleges that Dr. Garg was involved in the "robbery" of his laboratory notebooks, this conclusory allegation is belied by his specific, detailed allegations that the robbery occurred in 2012 before Dr. Garg was CEO.  *See* ECF 21, ¶ 4 ("Vaxin, Enright [Altimmune's then-CEO], and Drutz robbed all of Plaintiff's projects, resources, and laboratory records by changing all of the office/laboratory door locks in conjunction with defenestration of Plaintiff out of Vaxin in 2012."); *Id.* ¶ 7 ("[I]n 2016, Plaintiff informed Drutz (then-Chairman of the Altimmune Board) in writing during 2016 that all or the great majority of Plaintiff's UAB laboratory notebooks (1994-2004) had been taken by Vaxin and Enright against Plaintiff's will."). Dr. Garg's connection with Maryland as Altimmune's current CEO, without more, is insufficient for him to have foreseeably anticipated being "haled into court" in Maryland based on events that occurred outside of Maryland before he was CEO.  *See Fidrych*, 952 F.3d at 138.

12

As for Dr. Drutz, Dr. Tang does not allege that he took any action in Maryland that gives rise to his claims. Instead, he alleges that Dr. Drutz and others took his laboratory notebooks by locking him out of his laboratory in Alabama where the notes were located. ECF 21, ¶¶ 1, 4. ECF 21-1, at 3 (Dr. Tang email to Dr. Drutz, stating "Bill Enright robbed all of my UAB documents by changing door locks in 2012."). Dr. Tang refers to Dr. Drutz's reply to Dr. Tang's email, but that email was not sent or received in Maryland, and it merely communicated the board's confidence in its then-CEO. *See* ECF 21-2. It does not support the inference that Dr. Drutz took any actions in or towards Maryland that would give rise to personal jurisdiction over him here. Dr. Tang has failed to make a *prima facie* showing that his claims "arise out of or relate to" conduct by Dr. Drutz, in his individual capacity, that occurred in Maryland or was directed at Maryland residents. *See Fidrych*, 952 F.3d at 138.

Dr. Tang asserts that this Court should apply the same logic that the Alabama court used to find personal jurisdiction over Altimmune's then-CEO. ECF 21, at 4. But the law that led the Alabama court to find personal jurisdiction over the CEO—the alleged wrongdoing took place in Alabama—compels the inverse conclusion here. Dr. Tang does not allege any wrongdoing occurred in Maryland. Although he claims the "crimes occurred in Maryland," this conclusory allegation is undermined by his specific allegations that the alleged robbery occurred in Alabama before the company relocated to Maryland. Without any allegations that Dr. Drutz or Dr. Garg took actions in or towards Maryland in their individual capacities that gave rise to claims occurring in Maryland, the Court cannot exercise personal jurisdiction over them.

Dr. Tang has failed to show there is personal jurisdiction over Dr. Garg or Dr. Drutz in Maryland. His claims against them are dismissed without prejudice.

13

**B. Rule 12(b)(6)**

Next, the Court considers whether Dr. Tang states a viable claim against Altimmune, a company headquartered in Maryland over which the Court has general personal jurisdiction.

In his first cause of action, Dr. Tang alleges that the defendants have wrongfully retained his UAB laboratory notebooks, which Dr. Tang contends is a breach of the settlement agreement. *Id.* ¶ 12. In the second cause of action, which is more difficult to discern, Dr. Tang appears to allege that he owns the "AdHigh system," and the defendants are using it without authorization. *Id.* ¶ 13. The defendants contend that both claims must be dismissed, because Dr. Tang expressly released "any and all" claims contained in the settlement agreement and the claims were resolved in the August 2016 final consent judgment. ECF 23, at 2-4, 11, 15-16, 17, 19-20 (citing ECF 22-3, 23-1).[4] The defendants also argue that if Dr. Tang is asserting a breach of the settlement agreement, he fails to identify any contractual obligation that was breached. *Id.* at 11-12. And, the defendants contend that if there is any claim against Altimmune for improperly retaining Dr. Tang's laboratory notebooks in 2012, it is barred by the statute of limitations. *Id.* at 12-13.

As to his first claim regarding wrongful retention of the laboratory notebooks, Dr. Tang argues that the settlement agreement required him to relinquish ownership of the documents that Altimmune had furnished him while he was employed there, but it did not require him to give up his laboratory notebooks from UAB, which were created before Altimmune was founded. *Id.* ¶¶ 1-2. Dr. Tang alleges that Altimmune has improperly retained these UAB laboratory notebooks since they locked him out in 2012 and has ignored his requests to return them to him. *Id.* ¶¶ 3-4. The Court finds that Dr. Tang has failed to allege a viable claim for the return of his UAB

---

[4] The Court may consider these documents that were attached to the defendants' motion because they are integral to Dr. Tang's complaint, *see* ECF 21, at 5, 11 ¶¶ 6-7, 13 ¶ 12, and he has not challenged their authenticity. *See Caci Int'l*, 566 F.3d at 154.

laboratory notebooks—whether the theory of recovery is breach of contract or conversion—for three reasons.

First, there is no provision in the settlement agreement requiring Altimmune to return any personal property to Dr. Tang. *See* ECF 23-1. Because there is no alleged contractual obligation owed by Altimmune to Dr. Tang to return the laboratory notebooks, he does not state a viable claim of breach of contract. *See Cong. Life Ins. Co. v. Barstow*, 799 So. 2d 931, 937-38 (Ala. 2001) (granting judgment to defendant where defendant "did not breach its contract . . . because it was under no obligation" to perform).[5]

Second, the settlement agreement contains a general release of all claims. ECF 23-1, at 2-3 ¶ 4. Dr. Tang does not contest the agreement's enforceability. Under the settlement agreement, Dr. Tang released Altimmune "from any and all claims, known and unknown, asserted or unasserted," that he had or may have had against Altimmune as of August 7, 2016. *Id.*, *see also id.* at 5 ("Plaintiff freely, knowingly, and after due consideration, enters into this Agreement intending to waive, settle and release all claims Plaintiff has or might have against [Altimmune]."). Under this plain language, Dr. Tang's claim for return of UAB laboratory notebooks is barred, because as of August 7, 2016, Dr. Tang knew that his notebooks had not been returned and there was no agreement that they be returned. To the extent he had a viable claim for the return of the laboratory notebooks, he waived and released it in the settlement agreement. *See Regional Health Servs., Inc. v. Hale Cnty. Hosp. Bd.*, 565 So. 2d 109, 114 (Ala. 1990) ("With a general release, the parties obviously intend to release all claims . . . .").

---

[5] The settlement agreement is governed by Alabama law. ECF 23-1, at 4 ¶ 7. The same result would occur under Maryland law. *See Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012) ("Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of the obligation by defendant.'").

Finally, any claim for the return of laboratory notebooks is time-barred. This is because any such claim would have accrued in 2012, when Dr. Tang was locked out of his laboratory. At that point, Altimmune allegedly exercised dominion over the notebooks, which were in the laboratory, by taking, detaining, or interfering with his rights. *See Treadwell v. Farrow*, 253 So. 3d 967, 971 (Ala. Civ. App. 2017) ("The gist of the action is the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights . . . .").[6] If the claim accrued in 2012, the statute of limitations expired in 2018. *See* Ala. Code § 6-2-34 (six-year statute of limitations).[7] Dr. Tang argues that the claim first arose in 2019 when Altimmune's counsel asserted that the property belonged to Altimmune, ECF 27, ¶ 5, but that argument cannot be reconciled with his allegations that his laboratory notebooks were taken in 2012, ECF 21, ¶¶ 1, 4, 7, or his argument that Altimmune "took all of Plaintiff's documents including his university laboratory notebooks away from Plaintiff with brutal force by changing all the door locks at Vaxin Inc. in 2012," ECF 27, ¶ 3. The Court finds, based on the allegations in the amended complaint, that any potentially viable claim for the return of laboratory notebooks first accrued in 2012 when Dr. Tang was locked out of his laboratory and denied access to them. The statute of limitations on that claim, to the extent there is a viable claim, has run, and the claim is time-barred.[8]

---

[6] Maryland law on conversion is similar. *See Thompson v. UBS Fin. Servs., Inc.*, 115 A.3d 125, 127 (Md. 2015) ("A defendant converts a plaintiff's personal property where the defendant intentionally exerts ownership or dominion over [the plaintiff]'s personal property in denial of or inconsistent with the [plaintiff]'s right to [the plaintiff's personal] property.") (citations omitted).
[7] Under Maryland law, the statute of limitations would have expired in 2015. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (three-year statute of limitations).
[8] To the extent Dr. Tang is asserting a breach of contract claim that arose in 2019, as opposed to a conversion claim that arose in 2012, he has not identified an obligation under the settlement agreement that Altimmune allegedly breached.

16

Dr. Tang's claim regarding the AdHigh system fails because (i) the Court cannot discern what the claim is, and (ii) any claim for rights in the AdHigh system existed when the settlement agreement was signed, and those claims are barred by the release in the settlement agreement.

## IV.     Conclusion

The Court does not have personal jurisdiction over the individual defendants, and Dr. Tang has not stated a viable claim against Altimmune.  Dr. Tang was given the opportunity to correct deficiencies in his initial complaint.  ECF 19, 20.  He tried but was unable to do so.  Because amendment would be futile, dismissal with prejudice is appropriate.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 (4th Cir. 2017).  The defendants' motion, ECF 22, is granted.  The plaintiff's claims against Dr. Garg and Dr. Drutz are dismissed without prejudice and the claims against Altimmune are dismissed with prejudice.  A separate order follows.

March 24, 2023
Date

Deborah L. Boardman
United States District Judge